In the Matter of the Claim of MICHAEL P. FLANNERY, Appellant, v NASSAU COUNTY POLICE DEPARTMENT, Respondent. WORKERS' COMPENSATION BOARD, Respondent. [809 NYS2d 652]—

Crew III, J.P. Appeal from a decision of the Workers' Compensation Board, filed October 17, 2003, which ruled that claimant voluntarily withdrew from the labor market.

Claimant, a Nassau County police officer, sustained a compensable back injury on June 4, 2000 after falling down a flight of stairs at work. Claimant was out of work for approximately one month and, upon his return, was given a light-duty assignment consisting of answering the telephone and, eventually, filing summonses. Claimant continued to work in this capacity until his retirement on or about November 17, 2000. The employer contended that such retirement was entirely voluntary, and the matter was set down for a hearing, at the conclusion of which a workers' compensation law judge found, among other things, that claimant retired because of his disability and, hence, was entitled to continue to receive benefits. Upon review, a panel of the Workers' Compensation Board reversed that portion of the underlying decision, finding that claimant voluntarily withdrew from the labor market and, as such, was not entitled to receive benefits after November 17, 2000. This appeal by claimant ensued.

To be sure, whether a claimant voluntarily has withdrawn from the labor market by retiring is a factual issue for the Board to resolve, and the Board's determination in that regard will not be disturbed if it is supported by substantial evidence in the record as a whole (see Matter of Bury v Great Neck UFSD, 14 AD3d 786, 787 [2005]). Here, upon reviewing the testimony offered by claimant and his treating physicians, the Board found that "there is no evidence in the record that the claimant lost any time from work or was otherwise incapacitated from his regular job duties prior to his retirement. There is no credible evidence that the claimant was disabled at the time of his retirement or that a work related disability was a factor in or contributed to his decision to retire." Simply put, the Board's

findings in this regard find no evidentiary support in the record and, as such, the Board's conclusion that claimant voluntarily withdrew from the labor market cannot stand.

Claimant testified without contradiction (and the documentary evidence reflects) that he was out of work for approximately one month following his June 2000 injury and thereafter returned to work in a light-duty capacity until his retirement in November 2000. During this time period, claimant was totally disabled from performing the functions of a police officer due to the pain and persistent numbness that he was experiencing, as well as the side effects of the medications that had been prescribed for him. While we are mindful that credibility issues are the province of the Board and that the Board, in turn, is free to evaluate and credit competing medical evidence(see *Matter of Walker v TNT Red Star Express*, 25 AD3d 945, 946 [2006], there simply is nothing in the record to contradict the testimony offered by claimant or his treating physicians as to the time he initially lost from work and/or his inability to resume his regular police duties. Hence, the Board's finding that claimant failed to miss any time from work following his initial injury or was otherwise incapacitated from his regular duties prior to his retirement is factually incorrect and unsupported by the record.

We reach a similar conclusion with regard to the Board's finding that claimant was not disabled at the time of his retirement or that any such disability contributed to his decision to retire. Both claimant's treating orthopedist and chiropractor opined that claimant was totally disabled from performing his regular police duties following and as a result of the June 2000 incident. No contrary medical evidence was offered at the hearing.* As for claimant's light-duty assignment, while the record does not indicate that claimant received any medical advice to discontinue such assignment prior to retiring, the record does reflect that claimant was finding such work to be increasingly difficult given the persistent numbness that he was experiencing and the effect that the prescribed medications were having upon his ability to concentrate. As for claimant's ability to continue in a light-duty capacity, claimant's orthopedist testified that although claimant could, "in theory," perform some type of light-duty work in the future, such a finding at the time of the hearing would be "beyond speculation." Claimant's chiropractor offered similar testimony, stating that claimant could not work at all given that he could only drive a short distance and could

---

* Although the workers' compensation carrier's consultant subsequently submitted a report, as that evaluation occurred well after claimant retired, it did not speak to the issue of claimant's disability at the time of his retirement.

not stand or sit for more than 10 to 15 minutes without changing position. Finally, as for his motivation for retiring, claimant testified, "I was in too much pain of the lower back and both legs. The pain was getting worse, especially in the right side. The numbness to my feet was very bothersome and because of the medications I couldn't concentrate [and] had a hard time making decisions and because of all of those three things I had to retire. I couldn't do the job anymore." Generally speaking, a withdrawal is not voluntary where, as here, there is evidence that the claimant's "disability caused or contributed to the retirement" (*Matter of Lombardi v Brooklyn Union Gas Co.*, 306 AD2d 704, 705 [2003]). Under such circumstances, the Board's findings regarding claimant's disability and the motivation for his retirement cannot be sustained.

Peters, Mugglin, Rose and Kane, JJ., concur. Ordered that the decision is reversed, with costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.